UNITED STATES DISTRICT COURT OF NORTHERN INDIANA
SOUTH BEND DIVISION

CHARLES W. FLORANCE, Plaintiff,

v.

CAROL C. BARNETT,
JOSE R. ESPADA,
THOMAS M. EVERETT,
JENNIFER L. GEORGE,
ALICE J. SPRINGER,
PHILIP J. VOORHEIS, and
JAMES K. ESSEL, Defendants.

Cause No. 3:22cv399



**COMPLAINT**
Jury Trial Requested

**Action for Deprivation of Rights under 42 U.S. Code §§ 1983, 1985(2), and 1985(3)**

I, Charles W Florance, Plaintiff, state the following:

**Background**

Federal statutes that authorize student loan programs also require the issuing agency's Secretary to cancel the loan balances of borrowers with permanent and total disabilities. While the agencies that fund student loans have different procedural pathways for effecting this type of cancellation, the cancellation itself is mandatory once permanent and total disability is established.

The Public Health Service Act (PHSA) authorizes the US Department of Health and Human Services (HHS) to support Primary Care Loans (PCLs) for medical students who commit to practice in primary care specialties after graduation. Disability cancellation is an essential feature of all PCL loan agreements under 42 U.S. Code § 292r(d), but the process to cancel begins with a formal request to the borrower's medical school.

I had a PCL loan through Indiana University (IU). I sent IU staff PCL cancellation requests with copies of a then-recent Department of Veterans Affairs rating of permanent and total disability. The defendants then conspired to interfere with my PCL cancellation with HHS.

Their actions violated my rights. I had a property interest in cancellation that demanded adequate due process, but each of the Defendants denied me that. With State power and a shared discriminatory spirit, they appointed themselves gatekeepers to a nondiscretionary PHSA entitlement. This case is the product of those acts and that spirit.

**Parties**

1. Plaintiff Charles W. Florance lives at 802 S Ironwood Drive, South Bend, IN 46615. Plaintiff is a "qualified person with a disability" and a person with a "disability" as a member of a protected class within the meaning of civil rights statutes and regulations including 42 U.S. Code § 12102(A), 28 CFR § 35.104, 28 CFR § 35.130, and IC 22-9-1-3.

2. Defendant Carol C. Barnett lives at 1621 W Dove Drive, Bloomington, IN 47403. While named here in her individual capacity, she serves in the Office of General Counsel of Indiana University. Her State duties include advising IU administration on legal issues.

3. Defendant Jose R. Espada lives at 222 E 63rd Street Indianapolis, IN 46220. While named here in his individual capacity, he is the Director of Student Financial Services at Indiana University School of Medicine. His State duties include issuing student loans.

4. Defendant Thomas M. Everett lives at 50906 Ridgeview Lane, Granger, IN 46530. He is an associate with the law firm Barnes & Thornburg and represented Indiana University in its 2019 suit to recover the PCL balance.

5. Defendant Jennifer L. George lives at 1871 E Cheyanne Lane, Bloomington, IN 47401. While named here in her individual capacity, she is the Assistant Controller of IU's Accounting Services. Her State duties include the management and recovery of loans.

6. Defendant Alice J. Springer lives at 19226 Broken Tree Court, Bristol, IN 46507. She is a partner with the law firm Barnes & Thornburg and represented Indiana University in its 2019 suit to recover the PCL balance.

7. Defendant Philip J. Voorheis lives at 2210 Guthrie Road, Bedford, IN 47421. While named here in his individual capacity, he was the Manager of University Collections and Loan Services at Indiana University before his retirement in late 2021.

8. Defendant James K. Essel lives at 155 Potomac Passage, Unit 417, Oxon Hill, MD 20745. While named here in his individual capacity, he is a program specialist at the Health Resources & Services Administration. His Federal duties include being the Program Officer for Primary Care Loans.

### Jurisdiction and Venue

9. US District Courts have original jurisdiction under 28 U.S. Code §§ 1331 and 1343(a). This complaint can be considered under these sections because it requests damages for a civil rights conspiracy, addresses deprivations of rights under color of State law, and raises federal questions under the Constitution and laws like the Public Health Services Act.

10. This District Court is a proper Venue for 28 U.S. Code § 1391(b) and (e) because at least one defendant resides in this judicial district and Mr. Essel, the only defendant who doesn't live in this State, is an employee of the Federal Government.

### Stated Facts

11. I am, and at all relevant times was, a disabled veteran.

12. I attended the Indiana University School of Medicine in the fall of 2016. While a student, I received a Primary Care Loan (PCL) for $20,000 under a federal program offered through the Department of Health and Human Services (HHS). I withdrew from medical school the following semester, partly due to my disabilities. Though I asked them to wait on a pending disability determination, Indiana University filed suit on the PCL balance in 2019.

13. I received a permanent and total disability rating from the Department of Veterans Affairs (VA) on April 30, 2021. In that same rating decision, I was found unemployable due to my service-connected disabilities under 38 CFR § 4.16.

14. On May 12, 2021, I sent a formal PCL Cancellation request to Indiana University Medical School's director of Student Financial Services, Mr. Jose Espada. I later sent copies of the request to Mr. Philip Voorheis, Collections Manager for Indiana University (IU). In each request, I included a VA-generated letter indicating permanent and total disability, a Health and Human Services (HHS) Disability Checklist, a consent form to release protected health information, and a signed letter explaining the reasons for the request and the delay. These documents were required by PCL program guidelines that HHS published.

15. On May 19, 2021, I had a phone conversation with Ms. Alice Springer and Mr. Thomas Everett, IU's attorneys of record for the Primary Care Loan collection case. During that conversation, I told them about the VA's rating decision and how I was pursuing cancellation. The attorneys asked for 90 days to review the request and respond. I sent an email copy of my cancellation request to Ms. Springer and Mr. Everett that same day.

16. I heard nothing about PCL cancellation from any of the Defendants for four months.

17. On September 30, 2021, Mr. Everett filed a motion for Summary Judgment on the Primary Care Loan claim. The following day, I emailed Ms. Springer and Mr. Everett, asking them to withdraw the motion based on the PCL disability cancellation we discussed months earlier. They refused.

18. On October 5, 2021, I contacted HHS to ask about the status of my PCL cancellation request. HHS employee Mr. Jerry Locklear stated that they had not yet received a PCL cancellation request from Indiana University. He recommended that I communicate exclusively through IU's new PCL contact person, Ms. Jennifer George.

19. Ms. George sent me a letter on October 15, 2021 stating that the information I submitted to Indiana University "is not consistent with what the University understands to be the applicable law", and that she was not in a position to cancel the loan.

20. On November 10, 2021, I contacted Senator Mike Braun's office for assistance with the cancellation. A staff member, Abby Gentry, contacted HHS. On November 24, she received a response from HHS Associate Administrator Dr. Luis Padilla, MD, stating "At this time, [HHS] has not received a formal request for the permanent and total disability claim from Indiana University" but that he would "follow up … to request the required documents".

21. On or around December 9, 2021, HHS contacted Indiana University and requested that they submit my cancellation documents in accordance with agency guidelines.

22. Ms. Carol Barnett, of Indiana University's Office of General Counsel, submitted a response to HHS on or around December 17, 2021. This response did not include all the documents I submitted. Instead, Ms. Barnett added information to her response that changed the factual basis of my request. This information included statements of my involvement with two companies: The Indiana Whiskey Company and NFINET, inc. She stated that, because of the information she added, IU couldn't determine my permanent and total disability status or recommend cancellation, citing the gainful employment provision of 42 CFR § 57.211. She did all this in the dark. Ms. Barnett did not send me a copy of her letter or attachments. She never asked me about my employment or disability status. She never asked for supporting facts or evidence. She didn't even give me a chance to hear or challenge her assumptions before she sent them to HHS.

23. After receiving Ms. Barnett's response, HHS denied my PCL cancellation request.

24. Not content with the way my request was handled by the Defendants, I contacted the Primary Care Loan Program Officer, Mr. James Essel, directly. On March 25, 2022, I sent him unaltered copies of all the information that I previously sent to IU staff, along with tax and Social Security Administration records that challenged Ms. Barnett's response. In that letter, I requested a hearing. I also requested copies of the guidelines the Secretary uses to make disability determinations. Mr. Essel never responded.

25. PCL cancellation under 42 U.S. Code § 292r(d) is a Public Health Services Act entitlement only available to the severely disabled (or the dead). The "liability to repay the unpaid balance of [a PCL] loan and accrued interest thereon shall be canceled ... if the Secretary determines that he has become permanently and totally disabled". HHS's written guidance to participating schools states that only the Secretary determines cancellation.

26. The Department of Veterans Affairs Schedule for Rating Disabilities is well-established (38 U.S. Code § 1155 and 38 CFR Book C). This schedule is regularly readjusted so that a veteran's disability ratings reflect the average impairments of earning capacity resulting from similar injuries in civilian occupations. VA ratings are often used to qualify veterans for disability cancellation in Department of Education (DOE) student loan programs. By enacting 20 U.S. Code § 1087(a)(2) in 2008, Congress explicitly equated VA unemployability findings to permanent and total disability for student loan cancellation purposes. In 2021, following a Presidential memorandum on the same subject, the DOE adopted a rulemaking that would make student loan cancellations automatic[1] for veterans with ratings like mine.

27. Indiana University is subject to the Indiana Civil Rights Law. By accepting PHSA loan funds, IU must ensure its compliance with the Rehabilitation Act of 1973 and the Americans with Disabilities Act, among other laws (42 CFR § 57.216). Indiana University also maintains a non-discrimination policy that reads, in part, that: "Indiana University shall take affirmative action, positive and extraordinary, to overcome the discriminatory effects of traditional policies and procedures with regard to the disabled, minorities, women, and veterans".

---

[1] https://www.federalregister.gov/documents/2021/08/23/2021-18081/total-and-permanent-disability-discharge-of-loans-under-title-iv-of-the-higher-education-act%20published%208/23/2021

## Claim of Deprivation of Rights under 42 U.S. Code §§ 1983, 1985(2), and 1985(3)

28. These allegations rely on the paragraphs above.

29. Indiana University employees Mr. Espada, Mr. Voorheis, Ms. George, and Ms. Barnett acted together with Mr. Essel and attorneys Mr. Everett and Ms. Springer to disrupt a mandatory disability entitlement of the Public Health Service Act. But before they can take that away, the 5th and 14th Amendments to the United States Constitution require some form of procedural due process. The defendants denied me process when they:

(A) Claimed they would investigate my cancellation request and respond within 90 days, but then never responded;

(B) Did not respond to requests for information or updates, denying me any meaningful chance to be heard or to hear their reasons for delay and non-compliance;

(C) Authored and filed a summary judgment motion to recover the PCL balance many months after receiving my cancellation request;

(D) Refused to submit my cancellation request to HHS until ordered to by HHS senior staff;

(E) Falsified the factual basis for my disability cancellation by picking and choosing what parts of my cancellation request to submit;

(F) Misrepresented additional information to HHS that wasn't part of my cancellation request;

(G) Hindered HHS from performing its duty by delaying and altering the request;

(H) Denied me any chance to review or answer misrepresented information; and,

(I) Colluded to delay, obscure, and interfere with the purely ministerial function of submitting my cancellation request to HHS.

30. These acts were calculated to replace a congressionally-mandated duty with an ersatz discretion, a discretion inconceivable without conscious discrimination. The Defendants decided that I wasn't the right kind of disabled, or disabled enough, to qualify for cancellation even though they didn't have medical or financial evidence of any kind to support that decision. That prejudice drove Defendants to make the Primary Care Loan disability cancellation administratively impossible for me.

31. These defendants acted together to deny me any degree of procedural due process. While not an exhaustive list, individual defendant actions that violated my rights include:

(A) Mr. Espada issued the Primary Care Loan to me when I was a medical student. He was the initial recipient of USPS Certified Mail and email copies of my disability cancellation request (Exhibit A). He did not respond to me at all. He was aware of my disabilities at the time, and we had discussed disability cancellation of the PCL as early as 2017.

(B) Mr. Voorheis received copies of my cancellation request, then ignored my emails and phone calls and requests to forward my cancellation request to the HHS (Exhibit C). He told Mr. Espada that he would "take care of" the request, but he refused to submit the cancellation request to the HHS in accordance with the agency's regulations. He ignored all my requests for information and updates. He was also a deponent in Indiana University's PCL recovery claim and helped block my PCL cancellation request both to retaliate against me and to vindicate his role in the original lawsuit.

(C) Ms. George took over Mr. Voorheis's duties after his retirement. I was alerted to this fact by HHS (Exhibit D). She signed an affidavit supporting the summary judgment motion on September 30, 2021. I sent Ms. George my cancellation request, medical records, and a copy of regulations clarifying Veterans Affairs decisions on unemployability (38 CFR § 4.15, *et seq.*). She did not forward my request to HHS. Even when asked directly for one, she didn't give any tentative assessment on the cancellation. She asked me for very specific evidence (i.e. medical records and an updated information release) but didn't disclose that Ms. Barnett was using employability as the decisive issue; she never requested evidence of that kind. Even after HHS rescinded its denial, I asked her multiple times what other evidence she'd need to cooperatively support the cancellation (Exhibits E & F). No response.

(D) Ms. Barnett authored the response to HHS's official demand for my cancellation records. In her response, she excluded key documents from my cancellation request and added her own documents that both obscured the severity of my disabilities and trivialized the ratings from the VA. She did this without my knowledge or consent, and in a manner calculated to prevent me from examining or rebutting her additions and exclusions. My cancellation relied on a showing that I met the eligibility requirements of the Secretary; Ms. Barnett went out of her way to obscure that showing.

(E) Mr. Everett was aware of my disability cancellation request as early as May 19, 2021. Despite his assurances that he would investigate and respond to it (Exhibits B & C-1), he never did. Instead, he authored a summary judgment motion on the PCL recovery claim five months later. This motion was designed to use the laws and procedures of the State's courts to defeat entirely the Public Health Services Act's disability cancellation process.

(F) Ms. Springer was aware of my disability cancellation request as early as May 19, 2021. Even though this cancellation would have satisfied the claim she was hired to litigate, Ms. Springer directed other Defendants to delay the cancellation request. She required me to channel communications for Ms. George and Ms. Barnett through her. She is a partner in the firm Barnes & Thornburg. She supervised Mr. Everett, had knowledge and personal direction over his work, and was aware that his conduct could harm me. She expressly approved that harm when she refused my request to withdraw Mr. Everett's summary judgment motion.

32. Mr. Essel coordinated communications between Indiana University staff members Ms. George and Ms. Barnett, but he never once returned my phone calls. He was non-responsive to email requests for information, hearings, or copies of his program's regulatory standards. He told Ms. George that HHS denied my request, but he never told me. Worse, he never gave me any reasons for HHS to do so. His interference with the contract provision of the PCL required by 42 U.S. Code § 292r(d) was essential to the conspiracy's ultimate aim. He abused his program position to support the other Defendants' discriminatory actions.

33. While any one of the defendants could have simply sent my unaltered cancellation request through to HHS, it took all seven of them not to. The administrative gameplay was remarkably well coordinated: after the initial discussion with Ms. Springer and Mr. Everett, no other Defendant mentioned cancellation again for months; the attorneys requested a 90-day extension of the dispositive motion deadline in order to "evaluate the cancellation", then Mr. Voorheis retired on day 70; Mr. Essel said he was refusing to communicate with me because of the ongoing lawsuit; Ms. George sent me a perfunctory memo halfway through the summary judgment response deadline that said absolutely nothing about what standard she was using or what documents she'd already reviewed to reach a conclusion that "the required materials have not yet been submitted". The acts were unlikely to have been undertaken – and at that pace – without some agreement.

34. It's more coherent and economical to combine whatever remedies these facts support into a single lawsuit than to sue defendants individually for the parts they played.

35. I have suffered financial and physical losses because of the Defendants' actions. I had to schedule unnecessary doctor visits at the VA, find ways to approach HHS outside the chain of command, buy law books to make sense of the Defendants' constitutionally offensive behavior, and actually talk with a politician. My credit and reputation have been their hostages. I'm stressed out and ticked off.

### Prayer for Relief

I request a judgment for compensatory damages against all Defendants in an amount to be determined at trial, an award of costs, and all other relief the Court thinks is just.

### Verification

Under penalty of perjury, all Stated Facts are true. Paragraphs in the Claim section originate from the Stated Facts and are honestly reckoned, even if legally or logically flawed. I am not an attorney, and I apologize to the Defendants and the Court for any errors in form or procedure committed with this complaint.

Very Respectfully,

Charles W Florance
574/339-1737
cflorance@alumni.nd.edu