UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHARLES W. FLORANCE III,

    Plaintiff,

    v.

CAROL C. BARNETT, et al.,

    Defendants.

Case No. 3:22-CV-399 JD

**OPINION AND ORDER**

This case arises out of *pro se* plaintiff Charles Florance's ultimately successful attempts to have his student loans forgiven. Mr. Florance took out a Primary Care Loan ("PCL loan") for medical school under a federal program offered through the Department of Health and Human Services ("HHS")[1]. Mr. Florance defaulted on the debt, and his medical school, Indiana University ("IU"), filed suit to collect the debt in 2019. In 2021, Mr. Florance sent IU a letter requesting cancelation of the debt under 42 U.S.C. 292r(d), which provides for cancelation of the loan if the borrower is permanently and totally disabled. IU did not submit a discretionary recommendation that Mr. Florance's loan be canceled because the school administrators did not think Mr. Florance met the qualifications for total and permanent disability under the statute. HHS initially denied Mr. Florance's forgiveness request. Mr. Florance contacted a number of parties and, within a year, HHS informed IU that it had reversed its decision and instructed IU to cancel the loan. IU canceled the loan and dismissed its collections case against Mr. Florance.

---

[1] Some administrative processes of the PCL loan program are handled by the Health Resources and Services Administration, a subdivision of HHS. For simplicity, the Court has referred to both as HHS where possible in this opinion.

Nevertheless, Mr. Florance sued four administrators at IU and two of IU's external attorneys, claiming that they engaged in a conspiracy to deprive him of his constitutional due process rights, in violation of § 1983 and § 1985. A prior defendant, an employee of HHS, was dismissed pursuant to a stipulation. (DE 32.) The attorney defendants moved to dismiss (DE 10) and the IU defendants soon followed (DE 22). The Court now **GRANTS** both motions to dismiss with prejudice, finding Mr. Florance has not stated a claim for relief against any defendant.

A. Facts

The following facts are pulled from Mr. Florance's allegations, except where supplemented or contradicted by exhibits as noted by citations to the record. In the fall of 2016, Mr. Florance attended Indiana University School of Medicine. While a student, he received a Primary Care Loan for $20,000 under a federal program pursuant to the Public Health Services Act and offered through the Department of Health and Human Services. He withdrew in the following spring. In 2016, Mr. Florance pursued an unrelated determination of permanent and total disability from the Veteran's Administration (DE 1-1 at 1.) Several years elapsed, and on April 22, 2019, IU sued to collect the debt. (DE 10-1 at 2.) Again, several years elapsed. The litigation remained pending, and IU twice moved to stay proceedings, (DE 10-1 at 4, 7.) On May 12, 2021, two years after being sued, Mr. Florance informed IU that he had recently received a permanent and total rating of disability from the VA and requested that his student loans be forgiven. The next week, Mr. Florance spoke to IU's attorneys and informed them of his cancelation request. The collections litigation remained pending. On September 30, 2021, IU filed a motion for summary judgment in the collections case. The next day, Mr. Florance emailed IU's attorneys and asked them to withdraw the motion. They did not. On October 5, 2021, Mr. Florance contacted HHS to inquire regarding the status of his student loan cancelation. The HHS employee stated HHS had

not received a cancelation recommendation from the university. On October 15, 2021, IU sent a letter to Mr. Florance stating the information he submitted to IU "is not consistent with what the university understands to be the applicable law," and so the representative was not in a position to recommend cancelation.

Not contented with this turn of events, on November 10, 2021, Mr. Florance contacted Senator Mike Braun's office and requested assistance with his loan cancelation. A senatorial staffer contacted HHS and received a reply that HHS had not received a recommendation from IU, but HHS would contact IU. Meanwhile, on November 18, 2021, IU filed a motion to stay the collections proceedings, which the court granted on November 23. (DE 10-1 at 12.) On December 9, 2021, HHS requested information from IU, including a recommendation or explanation why no recommendation was offered. On December 17, 2021, IU responded in a letter to HHS explaining that it was not able to recommend Mr. Florance for cancelation because their research indicated he was engaged in gainful employment and thus did not meet the statutory requirements. (DE 23-1 at 1–2.) Meanwhile, the university requested, and was granted, a stay of the collections case pending HHS's review of Mr. Florance's cancelation request. (DE 10-6 at 2.) Presumably taking the university's recommendation into account, on March 17, 2022, HHS denied Mr. Florance's cancelation request, writing that he was ineligible because he was able to engage in substantial gainful activity despite his medical conditions. (DE 10-8 at 6.) IU communicated this determination to Mr. Florance on March 23, 2022. (DE 1-1 at 6.)

Again dissatisfied, Mr. Florance contacted HHS directly one week later and requested a hearing. On March 30, 2022, HHS wrote to IU informing the university that it was rescinding its earlier denial and re-reviewing the case. (DE 1-1 at 7.) IU communicated this information to Mr. Florance. (DE 1-1 at 8.) On May 26, 2022, HHS informed IU that "Mr. Florance meets the

statutory requirements for discharge of his loan" and recommended cancelation. (DE 10-6 at 2.) IU began the cancelation and moved to dismiss its collections claims on July 5, 2022. (DE 10-6 at 2). The dismissal was granted a week later.

Mr. Florance has brought this action under 42 U.S.C. § 1983 and 1985(2) and (3), alleging the university administrators, their attorneys, and an HHS employee conspired to deny Mr. Florance's student loan forgiveness application because they were motivated by discriminatory animus against the disabled. This discrimination is allegedly evidenced by the university's refusal to forward his requests verbatim in lieu of making their own determinations and recommendation, the attorneys' filing of a motion for summary judgment in the collections action, all parties' failure to respond to all of Mr. Florance's emails, and one attorney's untimely retirement. The defendants have moved to dismiss Mr. Florance's claims, which the Court now grants.

### B. Judicial Notice of Certain Documents

In ruling on a motion to dismiss under Rule 12(b)(6), certain documents may be considered without converting the motion to dismiss into a motion for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). The "court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

The Court considers the exhibits to Mr. Florance's complaint in rendering its decision. *See Bogie*, 705 F.3d at 608-09 ("Taking all facts pleaded in the complaint as true and construing all inferences in the plaintiff's favor, we review the complaint and all exhibits attached to the complaint."). The Court also takes judicial notice of the seven state court documents—including

4

the docket sheet, court's orders, and stipulated partial dismissal—attached by the attorney defendants in docket entry 10, because they are not subject to reasonable dispute. *See Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019). A court may properly take judicial notice of matters of public record, including court records. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records."). Judicial notice allows federal "courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *Id*. The court records are thus properly noticed.

The Court additionally considers two letters incorporated by reference to Mr. Florance's complaint: they are IU's December 17, 2021, letter to HHS (DE 23-1) and HHS's March 17, 2022, letter to IU (DE 10-8). "[T]he incorporation-by-reference doctrine provides that, if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Both letters are properly considered because they are referenced in the complaint. *See* (DE 1 at ¶ 22) ("Ms. Carol Barnett, of Indiana University's Office of General Counsel, submitted a response to HHS on or around December 17, 2021. This response…"); (DE 1 at ¶ 23) ("After receiving Ms. Barnett's response, HHS denied my PCL cancelation request."). Further, both letters are central to Mr. Florance's claims; his claims arise entirely from his communications with the university and HHS and their ensuing communications with each other. *Cf. Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (considering agreement allegedly giving rise to property interest in § 1983 due process case on motion to dismiss). Completeness also

instructs their consideration. *See L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1126 n.1 (7th Cir. 2022) ("Just as a plaintiff cannot prevent a court from considering parts of a contract that doom her claim by including in the complaint only the parts of a contract that support her side, a party's selection of part of a chain of communication does not prevent the court from considering the entire chain."); *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) ("Incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his own case."). Mr. Florance attached some of his communications with the university regarding his loan to his complaint and has based his claims on the communications (DE 1-1); fairness requires the Court consider the totality of these communications if provided with them.

C. **Legal Standards**

*(1) Standard on Motion to Dismiss*

To satisfy the federal pleading requirements, "[a] plaintiff's claim need only provide a short and plain statement of the claim showing that the pleader is entitled to relief sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal citations omitted). A plaintiff must plead enough facts to state a plausible—not merely conceivable—claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Pro se complaints are construed more forgivingly than a pleading prepared by a lawyer." *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020). "However, it is also well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). "When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th

Cir. 2013). "Leave to amend need not be granted, however, if it is clear that any amendment would be futile." *Id*.

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Facts in the complaint that disprove the asserted claim should be considered, and the court need not accept unsupported conclusions of law. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Even while construing the allegations in plaintiff's favor, documents properly considered "may permit the court to determine that the plaintiff is not entitled to judgment" when reviewing a motion to dismiss. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010), as amended (Dec. 16, 2010). To the extent an exhibit or judicially noticed document contradicts the complaint's allegations, the exhibit controls. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document. *See McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). The aforementioned facts were stated as favorably to Mr. Florance as permitted by the complaint and other materials that may be considered on a Rule 12(b)(6) motion.

### *(2) HHS Student Loan Forgiveness*

The laws governing the forgiveness of HHS medical school loans are relevant here. One statute and one regulation govern. Title 42 U.S.C. § 292r(d) provides: "The liability to repay the unpaid balance of such a loan and accrued interest thereon shall be canceled upon the death of the borrower, or if the Secretary determines that he has become permanently, and totally disabled." This is expounded further in 42 C.F.R. § 57.211(a):

7

> "The Secretary will cancel a student borrower's indebtedness . . . if the borrower is found to be permanently and totally disabled on recommendation of the school and as supported by whatever medical certification the Secretary may require. A borrower is totally and permanently disabled if he or she is unable to engage in any substantial gainful activity because of a medically determinable impairment, which the Secretary expects to continue for a long time or to result in death."

Title 42 U.S.C. § 292r(d) and 42 C.F.R. § 57.211(a) are the only statutory or administrative provisions relevant here. The plain language of the applicable statutes indicate cancelation of HHS is appropriate if the Secretary of Health and Human Services determines the borrower becomes permanently and totally disabled as defined in the statute and regulations. 42 U.S.C. § 292r(d). This determination is made by the Secretary and subject to a narrow definition: the borrower must be unable to engage in *any substantial* gainful activity because of a medically determinable impairment." 42 C.F.R. § 57.211(a) (emphasis added). While the Secretary has ultimate authority to determine whether the borrower is permanently and totally disabled, a federal regulation provides that the finding is to be "on recommendation of the school," giving the school a discretionary role in the process. Notably, 20 U.S.C. § 1087(a)(2), which automatically discharges the loans of those who have been determined to be unemployable by the Secretary of Veterans Affairs, does *not* apply here, because the loans were issued under HHS and pursuant to the Public Health Professionals Act, not by the Department of Education and under the Federal Family Education Loan Program. *See* 20 U.S.C. § 1087(a)(2) ("discharging such borrower's loans *under this subsection*") (emphasis added). Because § 1087(a)(2) does not apply, there is no law requiring the school to make a positive recommendation for cancelation if one is determined to be disabled by the VA.

### D. Discussion

Mr. Florance's claims fail because the defendants did not deprive him of a right, his claims are not actionable under § 1985, and his conspiracy claims are not plausible. To be sure, Mr. Florance has stated allegations indicating a bureaucracy that might annoy and frustrate a person, but he has not stated a claim for legal relief, as he suffered no deprivation as required to state a due process claim, and the disabled are not a protected class under § 1985. Mr. Florance misunderstands the law at several junctures, no doubt compounding his frustrations: his VA disability determination is totally unrelated to loan forgiveness under the applicable program, the IU defendants had no statutory or Constitutional obligation to forward his claim verbatim as their recommendation, and there is no Constitutional right to excellent and responsive customer service from state actors.

*(1) Section 1983 Claims*

Mr. Florance brings procedural due process claims against the IU defendants, arguing they deprived him of a property right by their slow, uncommunicative, and discriminatory proceedings. These claims fail for several reasons. First, Mr. Florance was not deprived of any right. Second, the defendants are not proper parties to this due process suit.

Mr. Florance has not stated a due process claim because he was not deprived of a property interest. "To plead a procedural due-process claim, [plaintiff] must allege [1] a cognizable property interest, [2] a deprivation of that interest, and [3] a denial of due process." *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). The Court will assume without deciding that Mr. Florance could have a property interest in the forgiveness of his student loans, which does not strike the Court as inherently unreasonable. *Cf. Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–77 (1972) (collecting cases finding a government entitlement property right). But

9

Mr. Florance has not been deprived of that interest: all parties agree that his student loans were forgiven under the eligible program. Mr. Florance hits a hard wall at the second prong of the test—he has suffered no deprivation.

To get around this, Mr. Florance would need to state some other property interest of which he was cognizably deprived. Mr. Florance takes a stab at this, arguing that he has a property interest in the process of reaching his entitlement. (DE 26 at 4.) Mr. Florance seems to assert he has a property interest in the speedy and convenient resolution of his student loan forgiveness application, though he refuses to confirm or deny whether this is his theory of recovery. (DE 26 at 1.) These arguments fail for multiple reasons. First, while due process protects property interests, no one has a property interest in due process, as that stretches the meaning of "property interest" beyond all meaning. *Cf. Bell v. City of Country Club Hills*, 841 F.3d 713, 717 (7th Cir. 2016) (defining "property interest"). Aside from defying the plain meaning of "property interest," one could not have a property right to due process, because such a right would defy due process analysis: it would eliminate the first prong of the test and make the remaining two duplicative.[2] The inquiry would be totally circular. Further, Mr. Florance has not provided any support for such a right, nor could the Court locate any upon independent search. In contrast, the available precedent contradicts such a right. *Cf. McDonald v. Astrue*, 465 F. App'x 554, 556 (7th Cir. 2012) (no due process right to Social Security disability determination in less than a year). The Court is not convinced a property right to the process of loan forgiveness, or any other

---

[2] E.g., (1) plaintiff has a property right to due process, (2) he was deprived of that right by inadequate process, and (3) the process was inadequate. It is nonsensical.

10

process, exists. Mr. Florance takes great umbrage at the idea that "all's well that ends well" (DE 14 at 2), but in the terms of Constitutional due process, that is often the truth.[3]

Second, Mr. Florance proceeds under the theory that delays in the process caused him to incur expenses, such as purchasing law books or taking the time to "actually talk to a politician," which he apparently construes as a deprivation of property. (DE 1 at ¶ 35.) A deprivation of property must be more than *de minimis* to be actionable under the due process clause. *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 803 (7th Cir. 2000). Deprivations of liberty or property "are not actionable under the Constitution unless they are atypical and significant in relation to the inevitable 'deprivations' that people suffer as a result of contractual disputes and the other ordinary frictions of life." *Baerwald v. City of Milwaukee*, 131 F.3d 681, 683 (7th Cir. 1997). The doctrine of *de minimis* harm places outside the scope of legal relief the sorts of small and regular injuries that "must be accepted as the price of living in society rather than made a federal case out of." *Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir. 1993). Mr. Florance's minor expenses clearly fall within this category. Were these sort of *de minimis* expenses actionable, every person who wins a lawsuit against the government might recover for their expenses litigating the case. There is no support for such a conception of law, and this inconvenience is not actionable as a property right under the Constitution.

Even if these expenses were actionable, they were caused by delay in resolving the loan forgiveness; the Court may properly consider to what extent the plaintiff caused the delay. *See Jones v. City of Gary, Ind.*, 57 F.3d 1435, 1444–45 (7th Cir. 1995) (finding no due process

---

[3] Further, Mr. Florance's conception of his denial of due process appears to be based significantly in the fact that various persons did not respond to all of his emails, though documents indicate defendants responded substantially. No case has found one's constitutional right to due process is violated by a state actor's failing to respond to emails, which does not fit into the notice and opportunity to be heard framework and is more accurately described as poor customer service.

violation). Mr. Florance mistakenly believed that his student loan was subject to a provision of an unrelated law that allowed for forgiveness if he obtained a finding of permanent and total disability from the Veteran's Administration. Accordingly, he did not send notice to IU that he was seeking forgiveness of his HHS loan until he had obtained a finding of permanent and total disability from the VA—years after he had been sued. Mr. Florance caused much of the delay and his ensuing bureaucratic headache by failing to file for forgiveness until after he obtained the irrelevant VA determination, which further undermines his due process claims.

Finally, were there a due process right of which Mr. Florance suffered a deprivation, he has not sued the proper defendants. Under the applicable statute, the university does not have the final decision-making authority regarding student loan forgiveness: that belongs to the Secretary of Health and Human Services. Due process requires an opportunity to be heard, but the university did not have the ability or responsibility to afford Mr. Florance a hearing; under the relevant law, that duty belonged to HHS.[4] Therefore, any defects in process are not actionable against the university or its attorneys; they would need to be brought against the party with authority to afford him a hearing, in this case, the Secretary of Health and Human Services. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319 (1976) (social security recipient brought due process claim against Secretary of Health, Education, and Welfare); *Brock v. Roadway Exp., Inc.*, 481 U.S. 252, 255 (1987) (employer brought due process violation against Secretary of Labor where statute assigned decision-making authority to the same); *Venckiene v. United States*, 328 F. Supp. 3d 845 (N.D. Ill. 2018), aff'd, 929 F.3d 843 (7th Cir. 2019) (plaintiff brought due process

---

[4] The Secretary's final control over the PCL loan process is further evidenced by 42 C.F.R. § 57.216a(d), which provides the procedure by which a university may obtain a notice and hearing from the Secretary in the event the university is found no longer eligible to participate in the PCL loan program.

claim grounded in extradition against Secretary of State where statute gave the same decision-making authority). Accordingly, Mr. Florance's due process claims must be dismissed.

*(2) Section 1985 Claims*

Mr. Florance also brings claims under § 1985(2) and (3). Section 1985(2) contains two clauses that give rise to two causes of action. *Wright v. Illinois Dep't of Child. & Fam. Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994). "The first clause prohibits conspiracies that interfere with federal judicial proceedings, and the second prohibits conspiracies that 'obstruct the course of justice in state courts.'" *Hernandez v. Dart*, 635 F. Supp. 2d 798, 809 (N.D. Ill. 2009) (*citing Kush v. Rutledge*, 460 U.S. 719, 725 (1983)). Although Mr. Florance does not specify which clause is at issue, the second clause is the only one that could possibly be implicated by defendants' actions, as the collections case occurred in state court. *See Hernandez*, 635 F. Supp. 2d at 809. Under § 1985(3) and the second part of § 1985(2), the defendants' actions must be motivated by an intent to deprive their victims of the equal protection of the laws. *Kush v. Rutledge*, 460 U.S. 719, 725 (1983). The Seventh Circuit has found this intent must be "a racial or otherwise class-based invidious discriminatory animus." *Nowicki v. Ullsvik*, 69 F.3d 1320, 1325 (7th Cir. 1995). Disability is not such a classification. The Seventh Circuit decisively foreclosed the possibility in *D'Amato v. Wisconsin Gas Co.*, which held that "[b]eing handicapped is not a historically suspect class such as race, national origin, or sex" in the context of a 1985(3) suit. *See* 760 F.2d 1474, 1487 (7th Cir. 1985). Where a plaintiff alleges animus based on a non-suspect class, as Mr. Florance has done here, he does not state a claim under § 1985(3). *See Ma v. CVS Pharmacy, Inc.*, 833 F. App'x 10, 14 (7th Cir. 2020) (finding plaintiff failed to state a claim where discrimination theory was predicated on status as a parolee).

13

*D'Amato* remains good law and controls, defeating Mr. Florance's 1985 claims. *See Summerland v. Exelon Generation Co.*, 455 F. Supp. 3d 646, 665 (N.D. Ill. 2020) (applying *D'Amato*).

Mr. Florance acknowledges the consequence of *D'Amato* on his action. (DE 26 at 5.) However, he is undeterred; he asks the Court to rule in his favor, comparing the wrongfulness of *D'Amato* and his alleged constitutional violation (delay of 14 months in receiving student loan forgiveness) to *Plessy v. Ferguson*, 163 U.S. 537 (1896) (legalizing segregation nationwide for nearly 60 years). Mr. Florance's assertions are groundless and, in any case, this Court is bound by controlling circuit precedent. *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) (a district court within the Seventh Circuit "must follow" the decisions of the Seventh Circuit). Because *D'Amato* controls, Mr. Florance has not stated a claim under § 1985.

Further, even if disability were a suspect class under § 1985, Mr. Florance's allegations do not support the inference that the defendants acted out of an animus towards the disabled. *See Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827–28 (7th Cir. 2022) (affirming dismissal where inference of animus was unsupported). The alleged violations of subsections of § 1985 "must be motivated by racial, or other class-based discriminatory animus." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Instead, Mr. Florance alleges that the defendants acted to determine whether Mr. Florance qualified for the program, writing, "The Defendants decided that I wasn't the right kind of disabled, *or disabled enough*, to qualify for cancelation." (DE 1 at ¶ 30.) Determining whether someone meets the statutory definition of disability required to qualify for a legal protection is not discriminatory. *See generally Weigel v. Target Stores*, 122 F.3d 461 (7th Cir. 1997) (discussing the spectrum of disability while determining whether plaintiff was entitled to the protection of the ADA as a "qualified individual with a disability"). Therefore, Mr.

14

Florance's § 1985 claims also fail because his allegations do not support an inference of animus against the disabled.

### *(3) Conspiracy Claims*

Mr. Florance makes several scattered references to a conspiracy throughout his complaint, though his briefing makes clear he intends to bring a § 1983 conspiracy claim.[5] Of course, his § 1985 claims are also inherently conspiracy claims. *See Turley v. Rednour*, 729 F.3d 645, 649 n.2 (7th Cir. 2013); *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009). However, these conspiracy claims fail for a variety of reasons. First, under § 1983, conspiracy is not an independent basis of liability. *Smith*, 550 F.3d at 617. If there is no underlying constitutional violation, a plaintiff's claim of a civil conspiracy to violate the constitution must fail as a matter of law. *See Daugherty v. Page,* 906 F.3d 606, 612 (7th Cir. 2018) (to prevail on a § 1983 conspiracy claim, the plaintiff "must show an underlying constitutional violation and demonstrate that the defendants agreed to inflict the constitutional harm."). Because Mr. Florance's underlying due process claim failed, his conspiracy claims also fail. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).

Finally, even if Mr. Florance's underlying constitutional violations were feasible, the Court does not find the conspiracy alleged by Mr. Florance to be plausible. As a rule, there is no heightened standard for pleading conspiracy claims. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). However, conspiracy claims remain subject to the pleading standard established in *Twombly* and *Iqbal*, namely, plausibility. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (announcing standard in conspiracy context). "Determining whether a complaint states a

---

[5] Though the text of 42 U.S.C. § 1983 does not contain language referring to conspiracy claims, constitutional conspiracy under § 1983 is well-established in this circuit. *See, e.g., Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018); *Wheeler v. Piazza*, 364 F. Supp. 3d 870, 879 (N.D. Ill. 2019).

plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Litigation alleging a "vast, encompassing conspiracy" must meet a "high standard of plausibility" in order to state a claim. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). The Seventh Circuit and Supreme Court have "warned against permitting a plaintiff 'with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence.'" *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975)). Here, Mr. Florance's allegation of conspiracy is supported only by routine motions practice in the collections case, one attorney's choice to retire, and nonexistent legal duties requiring defendants to advocate on his behalf.[6]

In *Geinosky v. City of Chicago*, the court reversed the lower court's dismissal of plaintiff's § 1983 conspiracy claim, writing "[i]t is a challenge to imagine a scenario in which that harassment would not have been the product of a conspiracy." 675 F.3d 743, 749 (7th Cir. 2012). But here, it is a challenge to imagine a scenario in which the extremely ordinary conduct alleged by Mr. Florance was the product of a conspiracy. *See also Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 827–28 (7th Cir. 2019) (affirming dismissal where "[g]etting from

---

[6] Mr. Florance's conspiracy allegations are as follows: "While any one of the defendants could have simply sent my unaltered cancelation request through to HHS, it took all seven of them not to. The administrative gameplay was remarkably well coordinated; after the initial discussion with Ms. Springer and Mr. Everett, no other Defendant mentioned cancelation again for months; the attorneys requested a 90-day extension of the dispositive motion deadline in order to 'evaluate the cancelation', then Mr. Voorheis retired on day 70; Mr. Essel said he was refusing to communicate with me because of the ongoing lawsuit; Ms. George sent me a perfunctory memo halfway through the summary judgment response deadline that said absolutely nothing about what standard she was using or what documents she'd already reviewed to reach a conclusion that 'the required materials have not yet been submitted.' The acts were unlikely to have been undertaken—and at that pace—without some agreement." (DE 1 at ¶ 33.) The Court finds Hanlon's razor applicable: "Never attribute to malice that which can be adequately explained by neglect."

these allegations to the nefarious conspiracy asserted by the [plaintiff] requires a speculative leap, not a reasonable inference.") Further, these allegations are contradicted by the plain text of the documents properly considered by the Court. Rather than revealing a prejudiced conspiracy, the letters show two legal departments considering whether an applicant qualified for a benefit under the statutory terms controlling eligibility. And rather than reveal a pattern of harassment, the collections case's docket is unremarkable, showing both that Mr. Florance enjoyed a stay of the litigation and that the university filed other motions to stay the litigation. (DE 10-1 at 4, 7, 12.) Interestingly, IU's motion for summary judgment—a significant basis of Mr. Florance's alleged constitutional violation—was filed one day after Mr. Florance filed his own motion for declaratory judgment on his counterclaims, perhaps reigniting the otherwise tepid litigation. (DE 10-1 at 10.) The Court finds Mr. Florance's allegations do not support the inference that defendants conspired to deny Mr. Florance's loan forgiveness because he was disabled. These claims fall short of the plausibility standard and are accordingly dismissed.

### E.  Conclusion

For the foregoing reasons, the Court **GRANTS** defendants' motions to dismiss (DE 10); (DE 22). The Court also **GRANTS** the motion to seal (DE 25), as it comports with the purpose of Federal Rule of Civil Procedure 5.2 The Court further finds that because Mr. Florance's claims are so thoroughly precluded by operation of law, any amendment would be futile, and the Court **ORDERS** the Clerk to prepare a judgment dismissing Mr. Florance's claims with prejudice.

SO ORDERED.

ENTERED: February 8, 2023

                                                   /s/ JON E. DEGUILIO
                                                   Chief Judge
                                                   United States District Court